UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN HALSTEAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24 CV 829 RWS |
| | ) | |
| LELAND DUDEK,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Ryan Halstead brings this action seeking judicial review of the

Commissioner's decision denying his application for disability insurance benefits

under Title II of the Social Security Act, 42 U.S.C. § 401 et seq.  42 U.S.C. §

405(g) provides for judicial review of a final decision of the Commissioner.

Because the Commissioner's final decision is supported by substantial evidence on

the record as a whole, I will affirm the decision of the Commissioner.

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**Procedural History**

Plaintiff was born in 1983 and alleges an amended onset date of November 7, 2022.  He alleges he became disabled because of traumatic brain injury, post-traumatic stress disorder, depression, anxiety, tinnitus, migraines, degenerative joint disease/tendonitis, obstructive sleep apnea, insomnia, vertigo, and attention deficit disorder.  (Tr. 226.)

Plaintiff's claims were denied initially and on reconsideration. (Tr. 73, 84.) On March 20, 2024, following a hearing (Tr. 29-63), an ALJ found that plaintiff was not under a disability as defined in the Act.  (Tr. 13-24.)  The Appeals Council denied Plaintiff's request for review.  (Tr. 1-5.)  Plaintiff timely filed for judicial review of the Commissioner's final decision in this Court under 42 U.S.C. § 405(g).  The ALJ's decision is now the final decision of the Commissioner.  42 U.S.C. § 1383(c)(3).

In this action for judicial review, plaintiff contends that his residual functional capacity (RFC) is not supported by substantial evidence and that the ALJ improperly evaluated opinion evidence.  He asks that I reverse the Commissioner's final decision and remand the matter for further evaluation.  For the reasons that follow, I will affirm the Commissioner's decision.

**Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt

2

plaintiff's recitation of facts (ECF 16-1) only to the extent they are admitted by the Commissioner (ECF 17-1). I also adopt the Commissioner's statement of additional material facts (ECF 17-2) as supported by the record. Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A.   <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must prove that he is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482

U.S. 137, 140-42 (1987).  At Step 1 of the process, the Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, at Step 2 the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment(s) is not severe, then he is not disabled.  At Step 3, the Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform his past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform his past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If he meets this burden and shows that he is unable to perform his past relevant work, the

4

burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has nonexertional limitations, the Commissioner may satisfy his burden at Step 5 through the testimony of a vocational expert. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  "[Substantial evidence] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted).  Determining whether there is substantial evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590

F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision.  *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence.  *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective complaints, the ALJ is required to consider whether a claimant's subjective complaints are consistent with the medical evidence.  *See Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (listing factors such as the claimant's daily activities, the duration, frequency, and intensity of the pain, precipitating and aggravating factors, dosage, effectiveness and side effects of medication, and functional restrictions).[2]  When an ALJ gives good reasons for the findings, the

---

[2] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character.  However, the analysis remains largely the same, so the Court's use of

court will usually defer to the ALJ's finding.  *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.   ALJ's Decision

In his written decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 7, 2022.  (Tr. 16.)  The ALJ found that plaintiff had the following severe impairments: post-traumatic stress disorder, anxiety, and attention deficit hyperactivity disorder.  (Tr. 16.)  The ALJ found plaintiff had the non-severe impairments of migraines, sleep apnea, history of traumatic brain injury, and tinnitus, and that degenerative disc disease and tendonitis were not medically determinable.  (Tr. 16.)  The ALJ determined that plaintiff's impairments or combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 17.)  The ALJ found plaintiff to have the residual functional capacity (RFC) to perform

---

the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record."  *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

a full range of work at all exertional levels but with the following nonexertional

limitations:

> The claimant can complete simple, routine tasks with minimal
> changes in job duties and setting; can have no fast-paced production
> work for example no hourly quotas; and can have no interaction with
> the general public, and only occasional interaction with coworkers and
> supervisors.

(Tr. 18.)  The ALJ found that plaintiff was unable to perform his past relevant

work as a police officer and relied upon vocational expert testimony to support a

conclusion that that there were significant jobs in the economy of food service

jobs, hand packer jobs, and cleaner jobs that plaintiff could perform.  (Tr. 23.)  The

ALJ therefore found plaintiff not to be disabled.  (Tr. 23.)

C.    <u>RFC Determination</u>

RFC is defined as "what [the claimant] can still do" despite his "physical or

mental limitations."  20 C.F.R. § 404.1545(a).  "RFC is an administrative

assessment of the extent to which an individual's medically determinable

impairment(s), including any related symptoms, such as pain, may cause physical

or mental limitations or restrictions that may affect his or her capacity to do work-

related physical and mental activities."  *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th

Cir. 2016).  The ALJ must determine a claimant's RFC based on all of the relevant

evidence, including the medical records, observations of treating physicians and

others, and an individual's own description of his limitations.  *McKinney v. Apfel*,

228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

Plaintiff claims that his RFC is not supported by substantial evidence because "the record does not contain any medical evidence that addresses plaintiff's physical ability to function in the workplace and that supports the RFC assessment." ECF 16 at 3.

Plaintiff generalized assertions of error about his "physical ability to function in the workplace" without pointing to any evidence in the record to support any exertional limitations make it difficult to analyze plaintiff's arguments. This is especially true here where plaintiff does not even specify which of his physical impairments should be considered severe, and his brief only discusses alleged errors related to the consideration of his nonexertional limitations. While plaintiff alleged some physical limitations such as vertigo and degenerative joint disease in his application (Tr. 226), nearly all of his treatment at the Department of Veterans Affairs (VA) was for mental impairments. (*See, e.g.*, Tr. 323-484, 494-630, 646-797.) Both state agency doctors who reviewed plaintiff's medical records found that his physical impairments were non-severe, meaning they did not significantly limit his ability to perform basic work activities. (Tr. 65-66, 75-76.) No treating physician indicated that he had any physical work-related limitations. Additionally, plaintiff ran miles at a time, went to the gym, did yoga, and engaged

in jiujitsu.  (Tr. 648, 657.)  Substantial evidence on the record as a whole supports the ALJ's determination that plaintiff's only severe impairments were nonexertional.

Plaintiff incorrectly suggests that the ALJ's RFC is not supported by substantial evidence unless there is a medical opinion which addresses his specific functional limitations.  Although the RFC must be supported by some medical evidence, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).   Instead, the RFC must be determined by the ALJ based on all the relevant evidence, which includes his subjective symptoms, his testimony, the medical evidence, and his daily activities.

In this case, after considering all this evidence, the ALJ concluded that plaintiff retained the capacity to perform a full range of work, with significant modifications tailored to his credible nonexertional limitations.  In so doing, he did not substantially err.  The ALJ properly evaluated the medical evidence using the new regulations applicable to plaintiff's claim.  *See* 20 C.F.R. § 416.920c(a) (2017) (when evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources.").  "Even though the RFC assessment draws

10

from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (internal quotation marks and citation omitted); *See* 20 C.F.R. § 416.920b(c)(1)-(3) (2017) (statements on issues reserved to the Commissioner, such as statements that a claimant is or is not disabled, are deemed evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled.").  It is for this reason that the ALJ properly disregarded the findings of disability from the VA and his retirement/long-term disability plans.

While the ALJ does have a duty to fully and fairly develop the record, the ALJ is not required to obtain additional medical evidence if the evidence of record provides a sufficient basis for the ALJ's decision. *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011).  Here, the substantial evidence on the record as a whole supports the ALJ's RFC determination and no additional consultative examinations were required.

To account for plaintiff's nonexertional limitations, the ALJ limited plaintiff to simple, routine tasks with minimal changes in job duties and setting, no fast-paced production work, no interaction with the general public, and only occasional interaction with coworkers and supervisors.  Plaintiff argues that his RFC should have included more restrictions on his social interactions with co-workers and

supervisors because the state agency psychologists and the ALJ found that he had a "marked" limitation in interacting with others as part of his Paragraph B analysis.[3]

Plaintiff's argument is rejected, as the ALJ does not examine the paragraph B criteria when fashioning the RFC.  Instead, the paragraph B criteria are used by the ALJ at Steps 2 and 3 of the five-step evaluation process to rate the severity of mental impairments in the following four functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and, adaptation and self-management.  Steps 2 and 3 are separate from the RFC assessment used at Steps 4 and 5 of the sequential evaluation process, which requires a more detailed assessment by itemizing various functional limitations.  *See* SSR 96-8p ("the limitations identified [for evaluating mental impairments] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process"); *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) ("As a practical matter . . . the different steps serve distinct purposes, the degrees of precision required at

---

[3] The ALJ determined at Steps 2 and 3 that plaintiff had a mild limitation in understanding, remembering, or applying information, moderate limitations with concentrating, persisting, or maintaining pace and adapting or managing oneself, and a marked limitation in the functional area of interacting with others.  (Tr. 17.)

each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized.").

After establishing plaintiff's functional limitations at Step Three, the ALJ considered the opinions of two state agency psychological experts in crafting an RFC, each of whom determined that plaintiff could "relate adequately to co-workers and supervisors." (Tr. 21.)  However upon a review of the evidence, including plaintiff's testimony and medical evidence post-dating the expert opinions, the ALJ decided that plaintiff had further limitations in interacting with others.  (Tr. 21-22.)   For that reason, the ALJ agreed with the experts that plaintiff should have no contact with the public but concluded that an additional restriction -- only occasional[4] interaction with supervisors and coworkers -- was required to account for his limitations in the area of interacting with others.  (Tr. 22.)

Occasional interaction with others properly accounts for a claimant's marked limitation in social interaction.  *See e.g., Hill v. Dudek,* 2025 WL 994112, at *2–3 (E.D. Ark. April 2, 2025) (limiting plaintiff to occasional interaction with co-workers and supervisors properly accounted for a marked limitation in interacting with others); *Nunemacher v. Kijakazi*, No. 4:21 CV427 DDN, 2022 WL 2952348 at *8–9 (E.D. Mo. July 26, 2022) (ALJ incorporated plaintiff's marked social

---

[4] "Occasionally means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday."  *See* SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996) (cleaned up).

functioning limitation by limiting plaintiff to no contact with the public and occasional contact with supervisors and coworkers); *Becherer v. Colvin*, No. 4:12CV356 ACL, 2014 WL 4230906 at *13–14 (E.D. Mo. Aug. 26, 2014) (ALJ incorporated findings of marked limitations in social functioning by limiting the plaintiff to no more than occasional interaction with supervisors, coworkers, and the public). The Court concludes that the ALJ's RFC limiting plaintiff to no contact with the public and only occasional interaction with co-workers and supervisors properly accounted for his mental impairments in social functioning and was supported by substantial evidence in the record as a whole, and his decision is entitled to deference. *See Hill*, 2025 WL 994112, at *5.

D.    Opinion Evidence

Plaintiff next argues that the ALJ erred in his evaluation of the medical opinion evidence when fashioning his RFC. Plaintiff argues generally that the ALJ's evaluation of opinion evidence did not comply with the new regulations by discussing the supportability and consistency of the evidence, the two most important factors required by the new regulations. *See* 20 C.F.R. § 416.920c(a)-(c) (2017) (in evaluating persuasiveness, ALJ should consider supportability, consistency, relationship with the claimant -- which includes length of the treatment relationship, frequency of examinations, examining relationship, purpose of the treatment relationship, and the extent of the treatment relationship,

specialization, and other factors); 20 C.F.R. § 416.920c(b)(2) (2017) (the ALJ was required to explain how she considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion).  Plaintiff specifically contends that the ALJ erred by failing to adequately discuss the opinions of VA treating psychiatrist Klara Curtis, M.D.,

In connection with plaintiff's requests for benefits, Dr. Curtis completed two forms: a January 2023 Family Medical Leave Act (FMLA) certification form indicating that plaintiff's trauma and interpersonal issues permanently compromised his ability to work in law enforcement (Tr. 313-20); and, a December 2023 insurance behavioral health assessment form indicating that plaintiff's PTSD significantly affected his ability to maintain safety of himself or others; maintain appropriate control of his emotions; and maintain focus, attend, and concentrate throughout a normal workday.  (Tr. 636- 39.)  Plaintiff contends that the ALJ erred by focusing only on Dr. Curtis's January 2023 opinion that he could no longer work in law enforcement to the exclusion of the remainder of her opinion.  Plaintiff claims that the ALJ ignored Dr. Curtis's opinion that he had a marked limitation in engaging in stress situations and interpersonal relations.

As discussed above, the ALJ found that plaintiff had a marked limitation in interacting with others as part of his Paragraph B analysis, which is consistent with

15

Dr. Curtis's finding.  But after consideration of all the evidence of record, including Dr. Curtis's and plaintiff's psychotherapy treatment notes from the VA and the opinions of agency psychological experts, the ALJ crafted an RFC which adequately addressed plaintiff's nonexertional limitations, including his social limitations.  Here, rather than focusing solely on one FMLA certification form detailing whether plaintiff could continue his job in law enforcement,[5] the ALJ thoroughly considered all of plaintiff's medical records, which indicate that plaintiff's symptoms had improved with treatment by early 2024.[6]

---

[5]This was not error as the ALJ is only required to perform source-level articulation of medical opinions.  *See* 20 C.F.R. § 404.1520c ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.")  And to the extent this (and the VA disability opinion) were part of other disability determinations, the ALJ properly found that both of these were statements on issues reserved to the Commissioner.  *See* 20 C.F.R. § 404.1504 (a decision by another agency about whether claimant is disabled is "based on its rules and . . . is not binding on [SSA].")

[6] Plaintiff was seen at the VA on November 10, 2022 (his alleged onset date) for a psychiatric assessment.  (Tr. 345-55).  He had normal mood and congruent affect, and become appropriately tearful at times.  (Tr. 346.)  His speech was slightly quick with normal volume, his thought content was normal with no delusions or hallucinations, logical and goal-directed thought processes, intact memory, and adequate judgment and insight.  (Tr. 346.)  Plaintiff reported intrusive memories, distressing dreams, flashbacks, intense or prolonged psychological distress, and marked psychological reactions to internal or external reminders.  (Tr. 349-55.)  He experienced panic attacks, hypervigilance, sleep disturbance, and concentration difficulties.  (*Id.*)  Diagnostic impression was post-traumatic stress disorder.  (Tr. 354.)  Plaintiff was examined by Dr. Curtis on January 12, 2023.  (Tr. 332.)  Plaintiff reported trauma from a coworker's suicide and from being shot at while a member of SWAT.  (Tr. 334.)  He reported feeling angry, hypervigilant, and isolated.  (*Id.*)  Dr. Curtis observed plaintiff was alert and oriented, cooperative, with appropriate eye contact, no abnormal movements, with normal speech rate and rhythm and intact and goal directed associations.  (*Id.*)  He was not delusional and had no hallucinations outside of presumed delirium.  (*Id.*)  His cognition was normal and his assessed GAF was 48.  (*Id.*)  Plaintiff's depression was rated severe on April 4, 2023 (Tr. 581), moderately severe on April 12, 2023 (Tr. 569), and mild by April 19, 2023.  (Tr. 560-61.)  During examination on May 18, 2023, Dr. Curtis observed plaintiff to be alert and oriented, with

During his visit with his treating VA psychologist in January 2024, plaintiff reported "notable improvement" in his PTSD and mood symptoms, fewer nightmares, better concentration and focus, and a better mood, as well as that he had socialized with friends over the holidays.  (Tr. 656-59.)   Plaintiff attributed his improvement to multiple factors, including marijuana gummies use.  (Tr. 657.) Plaintiff indicated that he had improved enough that he no longer required trauma-focused psychotherapy, and the therapist agreed.  (*Id.*)   He indicated only moderate symptoms.  (Tr. 654.)  His depression was rated moderately severe.  (Tr. 655.)  One week later in a call with the VA, plaintiff expressed interest in a meditation class to stay present in his thinking.  (Tr. 648.)  He denied emergent issues or being an imminent risk of harm to self or others and indicated he practiced 30 minutes of yoga daily in addition to jujitsu.  (*Id.*)

Here, the ALJ thoroughly considered plaintiff's ability to handle stress and interact with others throughout the decision, finding that the degree of limitation alleged by plaintiff and noted by Dr. Curtis in the FMLA certification form was not persuasive.  Contrary to plaintiff's claims, the ALJ specifically considered Dr. Curtis's statement that he could not continue working in law enforcement due to

---

appropriate grooming, eye contact, and cooperation.  (Tr. 521.)  He had good judgment and insight, with intact and goal directed associations, normal speech patterns, and no evidence of hallucination or delusion.  (*Id.*)  Physical examination at the VA on May 22, 2023, was normal for psychiatric symptoms.  (Tr. 510.)

inability to deal with stress and engage in interpersonal relations but found that it was a statement on an issue reserved to the Commissioner.  (Tr. 19.)  The ALJ also found that plaintiff's alleged degree of social limitations was inconsistent with evidence showing that he shopped in public, exercised around others (including doing group jujitsu and going to the gym), and his reports of spending time with family and friends over the holidays. (Tr. 20-21, 648, 657.)  As for plaintiff's alleged inability to handle stress, the ALJ noted that plaintiff no longer required trauma therapy as of early 2024, and reported fewer adverse symptoms as of that time.  (Tr. 657.)  *See* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

The ALJ also thoroughly considered plaintiff's treatment notes, including those from Dr. Curtis, which indicated that plaintiff was alert and oriented, had normal speech, showed no evidence of delusions or psychomotor agitation, had good insight, and was alert and oriented despite his report of a "lot of depression and anger" when asked about his mood.  (Tr. 336, 392-93, 576-77, 626, 757.)  *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").

And in assessing the opinions of two state agency psychological experts, the ALJ found neither fully persuasive as to plaintiff's limitations in the area of interacting with others and accordingly crafted a more restrictive RFC which excluded contact with the public and permitted only occasional interaction with supervisors and coworkers.  (Tr. 21.)  The ALJ concluded that the additional limitation on interacting with others was more consistent with plaintiff's testimony and the medical evidence post-dating the expert opinions.[7]  (Tr. 21-22.)

Contrary to plaintiff's argument, the ALJ adequately considered the persuasiveness of the medical source evidence by discussing the supportability and consistency of the evidence.  The ALJ is not required to use the word "supportability" when considering persuasiveness.  *See, e.g.*, *Beyes v. Kijakazi*, Case No. 4:22CV614 SRW, 2023 WL 1765185, at *8 (E.D. Mo. Feb. 3, 2023);

---

[7] The new regulations "require the ALJ to consider the opinions of state agency medical consultants because they are highly qualified and experts in Social Security disability evaluation. *See* 20 C.F.R. § 404.1513a.  The ALJ's reasonable reliance on an opinion from a highly qualified expert is within the zone of choice."  *Morton v. Saul*, Case No. 2:19CV92 RLW, 2021 WL 307552, at *8 (E.D. Mo. Jan. 29, 2021).  The new regulations permit an ALJ to rely on opinion evidence from a non-examining consultant if it meets the consistency and supportability factors. *See* 20 C.F.R. § 416.920c(a) (2017) (when evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources.").  Such a determination does not constitute reversible error as the new regulations permit the ALJ to consider medical source evidence as appropriate. 20 C.F.R. § 416.920a(b)(1) (2017).

*Atwood v. Kijakazi*, Case No. 4:20CV1394 JAR, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) ("use [of] the words 'supportability' and 'consistency' is not determinative; word choice alone does not warrant reversal"). "The regulation does not require an ALJ to address each and every part of a medical opinion to show that the entire opinion was properly considered; nor does it require the ALJ to entirely adopt each and every part of an opinion simply because she finds it persuasive." *McClure v. Saul*, Case No.1:20CV150 SNLJ, 2021 WL 3856577, at *7 (E.D. Mo. Aug. 30, 2021); *Koss v. Kijakazi*, Case No. 4:20CV996 RLW, 2022 WL 715009, at *10 (E.D. Mo. Mar. 10, 2022) (same).

Here, the ALJ adopted the limitations suggested by the opinion evidence to the extent they were supported by the evidence as a whole by limiting plaintiff to performing only simple, routine tasks with minimal changes in job duties and setting, not requiring fast-paced production work (no hourly quotas), and interacting only occasionally with coworkers and supervisors and never with the general public. He was not required to adopt the opinions of the medical experts verbatim, as "the ALJ is free to accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (applying the revised medical-opinion regulations and holding that "the ALJ is free to accept some, but not all, of a medical opinion"). The ALJ provided plaintiff a more restrictive RFC where the evidence as a whole supported it, and discounted those restrictions where

20

inconsistent with the record evidence. That is precisely the role of the ALJ, and although plaintiff may believe that he should have assessed the opinion evidence differently to support greater limitations, it is not my role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in his determination of plaintiff's RFC. *Hensley*, 829 F.3d at 934. Ultimately, "the interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citing *Clay v. Barnhart*, 417 F.3d 922, 930 (8th Cir. 2005)). Here, the ALJ did not substantially err in his assessment of the opinion evidence, and his decision is entitled to deference.

In this case, the ALJ evaluated all of the evidence of record and adequately explained his reasons for the weight given this evidence in a manner consistent with the new regulations. Good reasons and substantial evidence in the record as a whole support the ALJ's RFC determination, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial

evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed, and Ryan Halstead's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 17th day of April, 2025.